JEFFREY A. SCHWARZ AND ANGELA SCHWARZ, APPELLANTS, V.
PLATTE VALLEY EXTERMINATING, INC., APPELLEE.

606 N.W. 2d 85

Filed February 18, 2000.    No. S-98-1265.

Kelly L. Sudbeck, of Berreckman & Berreckman, P.C., for appellants.

Mark R. McKeone, of Hart Law Office, P.C., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.
Appellants, Jeffrey A. Schwarz and Angela Schwarz, brought this action for damages against Platte Valley Exterminating, Inc. (Platte Valley), alleging that Platte Valley breached a contract to perform a termite inspection of a home which they were purchasing. Following a bench trial, the district court for Dawson County, Nebraska, entered judgment in favor of Platte Valley and subsequently denied a motion for new trial. We moved this appeal to our docket on our own motion and now affirm the judgment of the district court.

FACTUAL AND PROCEDURAL BACKGROUND
This action was filed on February 11, 1997. The Schwarzes, in their petition, alleged that on November 2, 1994, they entered into a contract whereby Platte Valley agreed to inspect a home which they intended to purchase in order to determine the presence of wood-destroying insects; that Platte Valley breached the contract by failing to inspect the entire premises and to observe "unobstructed evidence of wood destroying insects in the residence"; and that as a result of the breach, they sustained damages. Platte Valley filed an answer generally denying the allegations.

On September 12, 1997, the Schwarzes' counsel served a discovery document entitled "Request for Admissions and Interrogatories, and Request for Production of Documents" by mailing it to counsel for Platte Valley. On October 21, counsel for Platte Valley served a document entitled "Response to Request for Admissions, Answers to Interrogatories, and Response to Production of Documents" by mailing it to the Schwarzes' counsel. This document was included in the trial

exhibits which were received at trial upon the Schwarzes' and Platte Valley's stipulations of admissibility.

Trial to the court commenced on September 18, 1998. Jeffrey Schwarz testified that on October 1, 1994, he and his wife, Angela Schwarz, moved into a rental home located at 1111 North Jefferson Street in Lexington, Nebraska, which they intended to purchase. Sometime prior to November 2, the real estate agent retained by the owner to sell the home asked Jeffrey Schwarz if he wanted a termite inspection of the home prior to closing the sale, and he agreed. The real estate agent contacted Platte Valley and requested the inspection.

On November 2, 1994, an inspector from Platte Valley inspected the home for termites and other wood-destroying insects. Following the inspection, Platte Valley issued to the real estate agent a "Wood Destroying Insect Information Existing Construction" report signed by the inspector, which indicated that there was no visible evidence of wood-destroying insects in unobstructed areas. The real estate agent gave this report to Jeffrey Schwarz approximately 9 days later, at which time he signed it. Platte Valley submitted a billing invoice for the inspection to the real estate agent, and the real estate agent paid Platte Valley from the proceeds of the sale. The cost of the inspection was listed on the closing statement settlement sheet dated November 7, 1994, as an expense to be paid by the Schwarzes.

On May 18, 1995, a representative of Orkin Exterminating Company, Inc., inspected the Schwarz home at their request and found evidence of termite infestation, which included "mud runs" in the basement and damage to floor joists. Jeffrey Schwarz testified that at the time Platte Valley inspected the home, he had noticed evidence of what was later determined to be termite activity, although he did not recognize it as such at that time.

The Platte Valley technician who inspected the Schwarz home testified that the inspection was intended to detect visible evidence of wood-destroying insects in unobstructed, accessible areas of the home. He stated that his inspection extended to only the basement, front porch, and the exterior of the home. He stated that the industry standard was to begin a termite inspection by entering the lowest level of the structure. He further

stated that where the basement walls extend above ground level and none of the walls below ground level are covered, thereby preventing detection of visible evidence of termites, the inspection need not involve the upper levels of the home. Such was the condition of the Schwarz home. The Orkin inspector who inspected the Schwarz home in May 1995, the owner of Platte Valley, and the owner of another pest extermination company each testified that this was indeed the industry standard.

Jeffrey Schwarz testified that when he moved into the home and at the time of the Platte Valley inspection, duct tape covered a crack in the basement wall, which was subsequently determined to be termite infested. The Platte Valley inspector testified that he did not remove the duct tape or any other wall coverings because it was not an industry standard or his normal procedure to remove objects from walls during a termite inspection. The owner of Platte Valley testified that the duct tape was not removed because Platte Valley does not perform destructive inspections, such as moving or removing objects, but that it performs visual inspections of only readily accessible, unobstructed areas. The Orkin inspector and the owner of another pest extermination company in the area both testified that, normally, whether they would have asked Jeffrey Schwarz to remove the duct tape would depend on what they had found up to that point; if there was no visible evidence of termites, the tape would not have been pulled off because it is not usual practice to move or remove objects. The Platte Valley inspector testified that there were no visible mud trails present during his inspection on November 2, 1994. He stated that in his opinion, his inspection of the Schwarz home complied with the industry standard at that time and that he possessed the skill and knowledge possessed by other termite inspectors in the community on that date.

The Orkin inspector testified on direct examination that based upon the nature of the termite infestation visible at the time of his inspection, it was his opinion that there probably would have been evidence of termite damage in the basement floor joists at the time of the Platte Valley inspection on November 2, 1994, which should have been detected. He further stated that if the mud trails he discovered were present during the November 2

inspection, the Platte Valley inspector should have seen them and should have concluded that there was evidence of termites. He testified that failure to report any evidence of termites on the inspection report form would not be considered a reasonable termite inspection. On cross-examination, the Orkin inspector agreed that termites can construct tunnels overnight and that it was therefore possible that mud tunnels were not present on the date of the Platte Valley inspection, but were constructed a short time thereafter. He further testified that termite damage to floor joists takes some time to develop.

The owner of Platte Valley testified that Jeffrey Schwarz contacted him in May 1995 and informed him that he had discovered termites in his home. Platte Valley's owner went to the Schwarz home and discovered a termite tunnel in a crack above the window in the upstairs bathroom, found evidence of termites in the crack in the basement wall which had been covered by duct tape, and also found a few termite tunnels in the floor joists in the basement. In October, he returned with an employee of Rhodes Chemical Company, bringing a boroscope to determine the extent of the termite damage, which they determined to be minor. He testified that he did not believe termites were present during the November 2, 1994, inspection based on his experience and the amount of damage he observed. He testified that it is possible for termites to be present in a home without any visible evidence of their presence. In the opinion of Platte Valley's owner, its inspector performed a reasonable inspection and his report of that inspection was accurate.

The owner of another pest extermination company in the area also testified that it is possible for termites to be present in a home without any visible evidence of their presence. He testified that based upon all of the testimony and his 8½ years of experience as a termite inspector, the inspector from Platte Valley had the skill and knowledge normally possessed by termite inspectors in the area.

Vickey Fulkerson resided in the Schwarz home for 6½ years, vacating it on September 23, 1994, approximately 1 week before the Schwarzes moved in. She testified that when she moved out, all of the wood walls in the basement were painted. After reviewing a videotape of the house prepared around the time of

the Orkin inspection in May 1995, Fulkerson testified that she noticed several new pieces of raw lumber had been added to the walls which were not present when she moved out. She also noticed that the walls in the bathroom were painted a different color and that a wallpaper border appeared over the crack above the window in the bathroom which was not there when she moved out. She also testified that at the time she vacated the home, the crack in the basement wall was not covered with duct tape and there were no weak spots in any of the floors, including that in the upstairs bathroom.

During the presentation of the Schwarzes' case in chief, their counsel called the court's attention to Platte Valley's discovery responses received as exhibit 23 and requested that the court take judicial notice of the date of serving requests for admissions, the date of response, and the provisions of Neb. Ct. R. of Discovery 36 (rev. 1996). The trial court did so, but noted that the taking of judicial notice of those matters "does not lead to the conclusion . . . of being deemed admitted."

On October 9, 1998, the trial court issued its order, finding for Platte Valley and dismissing the petition. The court concluded that determination of issues involving the requests for admission was unnecessary "in light of the fact that the evidence is clear that [the Schwarzes] failed to prove the allegations of the Petition by a preponderance of the evidence." The court further determined that assuming without deciding the existence of a contract, the evidence supported Platte Valley's contention that its inspection of the Schwarz home was in conformance with industry standards, and that there was insufficient evidence as to the presence of wood-destroying insects on November 2, 1994. Based upon these findings, the trial court entered judgment in favor of Platte Valley and subsequently denied the Schwarzes' motion for new trial.

## ASSIGNMENTS OF ERROR

The Schwarzes contend on appeal, summarized and restated, that the district court erred both in failing to deem as admitted their requests for admissions and in failing to find that the evi-

dence they had adduced at trial proved their breach of contract claim against Platte Valley.

## STANDARD OF REVIEW

■ On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *Spulak v. Tower Ins. Co.*, 257 Neb. 928, 601 N.W.2d 720 (1999); *State v. Hittle*, 257 Neb. 344, 598 N.W.2d 20 (1999).

■ In a bench trial of a law action, a trial court's findings have the effect of a jury verdict and will not be set aside on appeal unless clearly erroneous. *General Fiberglass Supply v. Roemer*, 256 Neb. 810, 594 N.W.2d 283 (1999); *Bauers v. City of Lincoln*, 255 Neb. 572, 586 N.W.2d 452 (1998); *Hansen v. Lien Termite & Pest Control Co.*, 229 Neb. 596, 428 N.W.2d 195 (1988).

■ In testing the sufficiency of the evidence to support the findings of fact, the evidence must be considered in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the successful party will have the benefit of every inference that is reasonably deducible from the evidence. *Larson v. Hometown Communications, Inc.*, 248 Neb. 942, 540 N.W.2d 339 (1995).

■ A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion. *Hausman v. Cowen*, 257 Neb. 852, 601 N.W.2d 547 (1999); *Nguyen v. Rezac*, 256 Neb. 458, 590 N.W.2d 375 (1999).

## ANALYSIS

We initially address the question of whether the district court erred in not deeming as admitted the facts asserted in the requests for admissions served by the Schwarzes on Platte Valley, because resolution of this issue affects our analysis of the other assignments of error. Rule 36 provides, in pertinent part:

> The matter is admitted unless, within thirty days after service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is

directed serves upon the party requesting the admission a written answer or objection addressed to the matter . . . .

. . . .

(b) Effect of Admission. Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission. The court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him or her in maintaining his or her action or defense on the merits.

We have held that a party's failure to make a timely and appropriate response to a request for admission constitutes an admission of the subject matter of the request, which matter is conclusively established unless, on motion, the court permits withdrawal of the admission. *Wibbels v. Unick*, 229 Neb. 184, 426 N.W.2d 244 (1988). Rule 36 is not self-executing, but requires that a party, claiming another party's admission by failure to respond properly to a request for admission, must prove service of the request for admission and the served party's failure to answer or object to the request and must subsequently offer the request for admission as evidence. *Wibbels v. Unick, supra*; *Arcadia State Bank v. Nelson*, 222 Neb. 704, 386 N.W.2d 451 (1986). However, rule 36 is self-enforcing, without the necessity of judicial action to effect an admission which results from a party's failure to answer or object to a request for admission. *Mason State Bank v. Sekutera*, 236 Neb. 361, 461 N.W.2d 517 (1990). Thus, if the necessary foundational requirements are met and there is no motion to withdraw an admission, a trial court is obligated to give effect to the provisions of rule 36.

The record reflects that the requests for admission were served on September 12, 1997, and that the expiration of the 30-day period specified in rule 36, computed as required by Neb. Rev. Stat. § 25-2221 (Reissue 1995), expired on October 13. However, because service was by mail upon opposing counsel, an additional 3 days is added to the prescribed period pursuant to Neb. Rev. Stat. § 25-534 (Reissue 1995), so that the responses were due on October 16. The responses were served on October

21, approximately 11 months prior to trial but 5 days after they were due. The record does not reflect that Platte Valley sought or received an enlargement of time in which to file its responses. Accordingly, the record establishes that Platte Valley failed to make a timely response to the requests for admission.

In addition to proving the absence of a timely response, a party seeking to prove admissions by an opposing party pursuant to rule 36 must offer the requests for admission as evidence. *Wibbels v. Unick, supra.* The obvious purpose of this requirement is to make an evidentiary record of the substance of the admissions. Here, it is urged that this requirement was met by the reception of exhibit 23, which is a copy of Platte Valley's responses to the requests for admission. This document contains each request for admission, but also reflects Platte Valley's responses, which included admissions of some of the facts as to which admission was requested, and denials of others. In some instances, the denials were accompanied by factual assertions upon which the denials were based. The response was signed in the presence of a notary public by the president of Platte Valley.

The Schwarzes' and Platte Valley's stipulations to the admissibility of exhibit 23 without any limitation as to the purpose for which it was offered established the relevance of its content. Evidence is relevant if it has any tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence, or the evidence tends to establish a fact from which the existence or nonexistence of a fact in issue can be directly inferred. *Doe v. Gunny's Ltd. Partnership*, 256 Neb. 653, 593 N.W.2d 284 (1999); *Alexander v. Warehouse*, 253 Neb. 153, 568 N.W.2d 892 (1997); Neb. Rev. Stat. § 27-401 (Reissue 1995). Thus, the trial court was obligated by rule 36(b) to treat the matters admitted in exhibit 23 as conclusively established for purposes of this action. However, it was also free to give whatever weight it chose to Platte Valley's denials and stated reasons therefor contained in the same exhibit, since they were relevant to the nonexistence of the facts as to which admission was requested.

With this in mind, we turn our consideration to the Schwarzes' contentions that the trial court erred in finding that

they had failed to meet their burden of proof and in overruling their motion for new trial. As noted, the Schwarzes' theory of recovery was an alleged breach of contract by Platte Valley. We have stated that "accompanying every contract is a common-law duty to perform with care, skill, reasonable expediency, and faithfulness the thing agreed to be done. A . . . failure to observe any of these conditions is a . . . breach of contract." *Lincoln Grain v. Coopers & Lybrand*, 216 Neb. 433, 437, 345 N.W.2d 300, 305 (1984). In order to succeed on the breach of contract claim, the Schwarzes were required to prove the existence of a contract and its breach by Platte Valley in failing to conduct an adequate inspection. See *Doupnik v. Usher Pest Control Co.*, 217 Neb. 1, 346 N.W.2d 699 (1984).

While we have some doubt as to whether the existence of a contract was established by the evidence, for purposes of our analysis, we assume without deciding that it was established. Whether the contract was breached depends upon whether Platte Valley's inspector failed to exercise the skill and knowledge normally possessed by members of his trade in good standing in similar communities. See *Doupnik v. Usher Pest Control Co., supra.* Factual issues related to this determination include whether there was visible evidence of termite infestation at the time of the inspection on November 2, 1994; and if not, whether the inspector complied with industry standards in searching for latent termite activity. See *id.*

There is conflicting testimony on these issues. Jeffrey Schwarz testified that he saw mud trails near a bathroom window and on the basement wall of the home on November 2, 1994, but did not realize until later that they were indicative of termite activity. The Platte Valley inspector denied seeing mud trails during his inspection on November 2. The Orkin inspector hired by Schwarz testified that based upon his inspection in May 1995 and the nature of the infestation at that time, it was his opinion that there probably was evidence of termites present in the basement floor joists, which evidence should have been detected during the inspection by Platte Valley 6½ months earlier. However, on cross-examination, he conceded that termites can construct tunnels overnight and that therefore, it was possible that visible evidence of termite activity was not present dur-

ing the inspection by Platte Valley on November 2, but may have appeared a short time thereafter. The previous occupant of the home, Fulkerson, testified that at the time she vacated the premises shortly before the Schwarzes moved in, there was a crack but no mud near the bathroom window, and that there were no weak spots in any of the floors. The testimony of the Platte Valley inspector that he conducted the inspection in accordance with industry standards was supported by the testimony of other witnesses.

■ Where credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Sullivan v. Sullivan*, 249 Neb. 573, 544 N.W.2d 354 (1996). Applying this principle and the applicable standard of review, which requires that we consider the evidence in a light most favorable to Platte Valley as the prevailing party at trial, we cannot say that the factual determinations by the trial court were clearly erroneous or that it abused its discretion in overruling the motion for new trial.

## CONCLUSION

Because Platte Valley's responses to requests for admission were received in evidence without limitation and pursuant to a stipulation of admissibility, the trial court was obligated to treat as admissions only those facts which Platte Valley specifically admitted. From our review of the admissions and all of the other evidence under the applicable standard, we cannot say that the findings upon which the trial court based its judgment were clearly erroneous or that it abused its discretion in overruling the motion for new trial. Accordingly, we affirm the judgment of the district court.

AFFIRMED.